## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH TELESCO, individually and on behalf of all others similarly situated,<br><br>                              Plaintiff,<br><br>     v.<br><br>STARBUCKS CORPORATION,<br><br>                              Defendant. | Civil Action No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Kenneth Telesco ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendant Starbucks Corporation ("Starbucks" or "Defendant").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

### NATURE OF THE ACTION

1.      This is a putative class action lawsuit on behalf of purchasers of Starbucks Cold Brew Concentrate coffee products (collectively, the "Coffee Products") against Defendant for manufacturing, distributing, and selling underfilled Coffee Products.[1]

2.      Starbucks is an American multinational chain of coffeehouses and roastery reserves.  Starbucks was valued at over 47 billion U.S. dollars worldwide in 2020, making it the second most valuable quick service restaurant brand in the world.[2]  In addition to its coffeehouse

---

[1] The Coffee Products include the Signature Black, Caramel Dolce, and Madagascar Vanilla flavors.  *See* https://athome.starbucks.com/products/cold-brew-multi-serve-concentrate-signature-black; https://athome.starbucks.com/products/cold-brew-multi-serve-concentrate-caramel-dolce; https://athome.starbucks.com/products/cold-brew-multi-serve-concentrate-madagascar-vanilla.

[2] https://www.statista.com/statistics/219513/starbucks-revenue-by-product-type/

locations, many Starbucks-brand coffee, ice cream, and bottled cold coffee drinks are sold at grocery stores throughout the United States.

3.      Starbucks engages in widespread false and deceptive advertising on its Coffee Products.  In a practice that offends reasonable consumer expectations, Defendant employs a classic bait-and-switch scheme that causes unsuspecting consumers to spend more money for less than the advertised amount of coffee they believe they are purchasing.  The packaging and labeling of the Coffee Products prominently advertise that they will produce a certain number of servings when, in fact, they do not.

4.      The FDA's Code of Regulations defines serving sizes for a wide variety of food products, including coffee.  Specifically, Table 2 of 21 C.F.R. § 101.12 defines "Reference Amounts Customarily Consumed Per Eating Occasion: General Food Supply."  *Id.*  One serving of "Coffee or tea, flavored and sweetened" is defined in this table as "12 fl oz (360mL)."  *Id.*

| Beverages: | | |
|---|---|---|
| Carbonated and noncarbonated beverages, wine coolers, water | 360 mL | 12 fl oz (360 mL) |
| Coffee or tea, flavored and sweetened | 360 mL prepared | 12 fl oz (360 mL) |

5.      Plaintiff purchased the Coffee Products, which prominently advertises on its front labels that one bottle "Makes 8 Servings When Prepared As Directed" (the "Serving Claims"):



6.     But according to both the CFR and Starbucks's own measurements, the Coffee

Products only produce 5 servings of coffee per 32 ounce bottle:



3

7.      To get the 8 services promised, Starbucks uses inconsistent serving sizes.  Per the instructions located on the side of the bottle, one serving of Starbucks Cold Brew Coffee consists of 4 fluid ounces of the Coffee Products and 4 fluid ounces of water – for a total serving size of 8 fluid ounces:



8.      But as explained above, 8 fluid ounces is not one serving of coffee, it is two-thirds of a single serving.  To make the advertised 8 servings, the Coffee Products would have to contain approximately 48 fluid ounces of concentrate, which would produce 96 ounces of coffee, or 8 servings of 12 fluid ounces each, when mixed in a "1:1 ratio" with water as directed.  But the Coffee Products purchased by Plaintiff contains only 36 fluid ounces of concentrate.  Thus, the Coffee Products are underfilled by 33 percent.

## PARTIES

9.      Plaintiff Kenneth Telesco is a citizen of New York, residing in New Rochelle, New York.  In or about September 2021, Plaintiff Telesco purchased one 32 fluid ounce bottle of Starbucks Cold Brew Concentrate from his local Stop and Shop grocery store in New Rochelle, New York.  Prior to his purchase of the Coffee Product, Plaintiff Telesco reviewed the product's labeling and packaging and saw that the Coffee Product purportedly contained 8 servings of coffee.  Plaintiff Telesco relied on that labeling and packaging to choose his Coffee Product over comparable products.  Plaintiff Telesco saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that his Coffee Product was contained 8 servings of coffee.  Plaintiff Telesco relied on these representations and warranties in deciding to purchase his Coffee Product.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the Coffee Product on the same terms had he known these representations were not true.  In making his purchase, Plaintiff Telesco paid a substantial price premium due to the false and misleading Serving Claims. However, Plaintiff Telesco did not receive the benefit of his bargain because his Coffee Product, in fact, did not contain 8 servings.  Further, Plaintiff Telesco understood that the purchase came with Defendant's representation and warranties that his Coffee Product contained 8 servings.

10.      Defendant is a corporation organized and existing under the laws of the state of Washington, with corporate headquarters at 2401 Utah Ave South, Seattle, WA, 98134. Starbucks manufactures, sells, and/or distributes Starbucks-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of the Coffee Products.  Starbucks manufactured, marketed, and sold the Coffee Products during the class period.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of states different from Defendant.

12.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within New York, such that Defendant has significant, continuous, and pervasive contacts with the State of New York.  Defendant is registered to do business in the State of New York.  Furthermore, a substantial portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's purchase.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and (c) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District and because Defendant transacts business and/or has agents within this District.

## FACTUAL ALLEGATIONS

14.     Defendant's advertising and marketing of the Coffee Products is false and misleading and omits material information.  Each of the Coffee Products prominently advertises on the front label that each bottle "Makes 8 Servings When Prepared As Directed:"





15.     But as seen from their "Nutritional Facts", and consistent with CFR Guidance, "3/4 cup (180 mL) concentrate makes 1-1/2 cups (360 mL)."  In other words, 1 serving of the Coffee Products consists of 3/4 cups (6 fluid ounces or 180 mL) of concentrate mixed with 3/4 cups (6 fluid ounces or 180 mL) of water, for a total serving size of 1 and 1/2 cups (12 fluid

ounces or 360 mL).



16.     Consumers reasonably expect that the Coffee Product will yield the number of servings advertised on the front label.  Instead, Defendant performs a classic bait and switch, to mislead reasonable consumers into thinking that the Coffee Products will produce 8 servings of coffee, when they will actually produce only 5 servings – a difference of 37.5%.

17.     Defendant's misrepresentations and/or omissions violate consumers' reasonable expectations and, as alleged herein, New York's consumer protection statutes.  The number of servings of coffee that each bottle of the Coffee Product actually produces is objective factual proof that the Coffee Products are falsely advertised.

18.     Throughout the class period defined below, Defendant has engaged in, and continues to engage in, an advertising and marketing campaign that misrepresents its Coffee Products.  Defendant has engaged in, and continues to engage in, a pattern of willful conduct, through affirmative misrepresentations and/or material omissions, designed to mislead and lure consumers into purchasing Coffee Products they would not have otherwise purchased.  As a result of this deception, Defendant has sold thousands, if not millions, of Coffee Products to unsuspecting consumers across the country, including in New York.

19.     Defendant's advertising claims are false, misleading, and deceptive because Defendant willfully misrepresents on the labeling and packaging of its Coffee Products information that is material to consumers' purchasing decision – the number of servings of coffee that each bottle will produce.  Defendant, thus, intentionally misleads consumers into purchasing its Coffee Products based on false, misleading, and deceptive advertising that portrays the Coffee Products as having characteristics that they do not, in fact, have.

20.     In making the false, misleading, and deceptive representations and omissions described above, Defendant knew and/or intended that consumers would purchase its Coffee Products and pay more for them under the false – but reasonable – belief that each bottle would produce more servings of coffee than it actually does.  By advertising so prominently that the Coffee Products produce more cups than they actually do, Defendant proves that information about serving yield is material to consumers.  If such information were not material, Defendant would not feature it in capital letters on the front label of every Coffee Product.

21.     Any reasonable consumer would rely on Defendant's false, misleading, and deceptive representations and/or omissions about serving yield when deciding whether to purchase the Coffee Product.  Plaintiff and Class and Subclass Members did so to their detriment.  Defendant's representations and/or omissions misled Plaintiff and Class and Subclass Members and are likely to mislead the broader consuming public.

22.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and/or omissions, Plaintiff and Class and Subclass Members were injured in that they: (1) paid money for Coffee Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than what Defendant advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than what Defendant represented.

23.     Had Defendant not made the false, misleading, and deceptive representations and/or omissions alleged herein, Plaintiff and Class and Subclass Members would not have purchased the Coffee Products or would not have paid as much as they did for such products. Thus, each Plaintiff and Class and Subclass member suffered an injury in fact and lost money or property as result of Defendant's wrongful conduct.

## **CLASS ALLEGATIONS**

24.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

25.     Plaintiff seeks to represent a class defined as all people who purchased any Starbucks Coffee Product falsely advertising the number of servings of coffee that the product would purportedly produce during the applicable statute of limitations and who have not received a refund or credit for their purchase(s) (the "Class").  Specifically excluded from the Class are Defendant, Defendant's officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint ventures, or entities controlled by Defendant, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendant and/or Defendant's officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

26.     Plaintiff also seeks to represent a subclass consisting of Class Members who reside in New York (the "Subclass").

27.     Subject to additional information obtained through further investigation and discovery, the foregoing definitions of the Class and Subclass may be expanded or narrowed by amendment or amended complaint.

28.     **Numerosity.**  The Class and Subclass Members are geographically dispersed throughout the United States and are so numerous that individual joinder is impracticable.  Upon information and belief, Plaintiff reasonably estimates that there are hundreds of thousands of Members in the Class and Subclass.  Although the precise number of Class and Subclass Members is unknown to Plaintiff, it is known by Defendant and may be determined through discovery.

29.     **Existence and predominance of common questions of law and fact.**  Common questions of law and fact exist as to all Members of the Class and Subclass and predominate over any questions affecting only individual Class or Subclass Members.  These common legal and factual questions include, but are not limited to, the following:

(a)   Whether Defendant made false and/or misleading statements to the consuming public concerning the serving yield in the Coffee Products;

(b)   Whether Defendant omitted material information to the consuming public concerning the actual serving yield in the Coffee Products;

(c)   Whether Defendant's labeling and packaging for the Coffee Products is misleading and/or deceptive;

(d)   Whether Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising and sale of the Coffee Products;

(e)   Whether Defendant's representations concerning the Coffee Products were likely to deceive a reasonable consumer;

(f)   Whether Defendant's omissions concerning the Coffee Products were likely to deceive a reasonable consumer;

(g)   Whether Defendant represented to consumers that the Coffee Products have characteristics, benefits, or qualities that they do not have;

(h)   Whether Defendant advertised the Coffee Products with the intent to sell them not as advertised;

(i)   Whether Defendant falsely advertised the Coffee Products;

(j)   Whether Defendant made and breached express and/or implied warranties to Plaintiff and Class and Subclass Members about the Coffee Products;

(k)   Whether Defendant's representations, omissions, and/or breaches caused injury to Plaintiff and Class and Subclass Members; and

(l)   Whether Plaintiff and Class and Subclass Members are entitled to damages.

30.     **Typicality.**  Plaintiff's claims are typical of the claims of the other Members of the Class and Subclass in that, among other things, all Class and Subclass Members were deceived (or reasonably likely to be deceived) in the same way by Defendant's false and misleading advertising claims about the serving yield of the Coffee Products.  All Class and Subclass Members were comparably injured by Defendant's wrongful conduct as set forth herein.  Further, there are no defenses available to Defendant that are unique to Plaintiff.

31.     **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the Members of the Class and Subclass.  Plaintiff has retained counsel that is highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action on behalf of the Class and Subclass.  Furthermore, Plaintiff has no interests that are antagonistic to those of the Class or Subclass.

32.     **Superiority.**   A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class and Subclass Members are relatively small compared to the burden and expense of individual litigation of their claims against Defendant.  It would, thus, be virtually impossible for Class or Subclass Members to obtain effective redress on an individual basis for the wrongs committed against them.  Even if Class or Subclass Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  It would also increase the delay and expense to all parties and the court system from the issues raised by this action.  The class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

33.     In the alternative, the Class and Subclass may also be certified because:

(a)     the prosecution of separate actions by individual Class and Subclass

Members would create a risk of inconsistent or varying adjudications with

respect to individual Class or Subclass Members that would establish

incompatible standards of conduct for Defendant;

(b)     the prosecution of separate actions by individual Class and Subclass

Members would create a risk of adjudications with respect to them that

would, as a practical matter, be dispositive of the interests of other Class

and Subclass Members not parties to the adjudications, or substantially

impair or impede their ability to protect their interests; and/or

(c)     Defendant has acted or refused to act on grounds generally applicable to

the Class and to each Subclass as a whole, thereby making appropriate

final declaratory and/or injunctive relief with respect to the Members of

the Class and to the Members of the Subclass as a whole.

### COUNT I
**Breach of Express Warranty**
**(On Behalf of the Class and Subclass)**

34.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations

contained in all preceding paragraphs of this complaint.

35.     Plaintiff brings this claim individually and on behalf of the Members of the

proposed Class and Subclass against Defendant.

36.     As the designer, manufacturer, marketer, distributor, and/or seller of the Coffee

Products, Defendant issued an express warranty by representing to consumers at the point of

purchase that each Coffee Product would yield a certain number of servings of coffee.

Defendant's representations were part of the description of the goods and the bargain upon which

the goods were offered for sale and purchased by Plaintiff and Members of the Class and
Subclasses.

37.     In fact, the Coffee Products do not conform to Defendant's representations about
serving yield.  Each Coffee Product produces fewer servings of coffee than what Defendant
represents.  By falsely representing the Coffee Products in this way, Defendant breached express
warranties.

38.     As a direct and proximate result of Defendant's breach, Plaintiff and Members of
the Class and Subclasses were injured because they: (1) paid money for Coffee Products that
were not what Defendant represented; (2) were deprived of the benefit of the bargain because the
Coffee Products they purchased were different than Defendant advertised; and (3) were deprived
of the benefit of the bargain because the Coffee Products they purchased had less value than
Defendant represented.  Had Defendant not breached the express warranty by making the false
representations alleged herein, Plaintiff and Class and Subclass Members would not have
purchased the Coffee Products or would not have paid as much as they did for them.

39.     On or around May 18, 2021, prior to filing this action, Defendant was served with
a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's
counsel sent Defendant a letter advising Defendant that it breached an express warranty and
demanded that Defendant cease and desist from such breaches and make full restitution by
refunding the monies received therefrom.  The letter also informed Defendant of its breach of
implied warranties and numerous statutory violations.

**COUNT II**
**Breach of Implied Warranty**
**(On Behalf of the Class and Subclass)**

40.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations
contained in all preceding paragraphs of this complaint.

41.     Plaintiff brings this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

42.     Defendant routinely engages in the manufacture, distribution, and/or sale of the Coffee Products and is a merchant that deals in such goods or otherwise holds itself out as having knowledge or skill particular to the practices and goods involved.

43.     Plaintiff and Members of the Class and Subclass were consumers who purchased Defendant's Coffee Products for the ordinary purpose of such products.

44.     By representing that the Coffee Products would produce a certain number of servings, Defendant impliedly warranted to consumers that the Coffee Products were merchantable, such that they were of the same average grade, quality, and value as similar goods sold under similar circumstances.

45.     However, the Coffee Products were not of the same average grade, quality, and value as similar goods sold under similar circumstances.  Thus, they were not merchantable and, as such, would not pass without objection in the trade or industry under the contract description. As a direct and proximate result of Defendant's breach, Plaintiff and Members of the Class and Subclass were injured because they paid money for Coffee Products that would not pass without objection in the trade or industry under the contract description.


**COUNT III**
**Deceptive Acts Or Practices**
**Violation of New York Gen. Bus. Law § 349**
**(On Behalf of the Class and Subclass)**

46.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

47.     Plaintiff brings this claim individually and on behalf of the Members of the proposed New York Subclass against Defendant.

48.     Defendant committed deceptive acts and practices by employing false, misleading, and deceptive representations and/or omissions about the serving yield of its Coffee Products to mislead consumers into believing the Coffee Products they purchase will yield a greater number of servings than each bottle actually yields.

49.     Plaintiff has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased a Coffee Product for his own personal consumption.  In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Coffee Product would produce more servings of coffee than it actually did.  Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

50.     Defendant's deceptive acts and practices were directed at consumers.

51.     Defendant's deceptive acts and practices are misleading in a material way because they violate consumers' reasonable expectations.  Defendant knew consumers would purchase Coffee Products and/or pay more for them under the false – but reasonable – belief that each bottle would produce more servings than it actually does.  By advertising so prominently that the Coffee Products yield more servings than they actually do, Defendant proves that information about serving yield is material to consumers.  If such information were not material, Defendant would not feature it in capital letters on the front label of every Coffee Product bottle.  As a result of its deceptive acts and practices, Defendant has sold thousands, if not millions, of Coffee Products to unsuspecting consumers across New York.  If Defendant had advertised its Coffee Products truthfully and in a non-misleading fashion, Plaintiff and other Class and Subclass Members would not have purchased them or would not have paid as much as they did for them.

52.     As a direct and proximate result of Defendant's false, misleading, and deceptive

representations and/or omissions, Plaintiff and other Members of the Class and Subclass were injured in that they: (1) paid money for Coffee Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than Defendant represented.

53.     On behalf of himself and Members of the New York Subclass, Plaintiff seeks to enjoin Defendant's unlawful acts and practices and recover his actual damages or fifty (50) dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT IV**
**False Advertising**
**Violation of New York Gen. Bus. Law § 350**
**(On Behalf of the Class and Subclass)**

54.     Plaintiff hereby incorporates by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint.

55.     Plaintiff brings this claim individually and on behalf of the Members of the proposed Class and Subclass against Defendant.

56.     Defendant engaged in a campaign of false advertising with regard to the serving yield of its Coffee Products to mislead consumers into believing the Coffee Products they purchase will yield a greater number of servings than each bottle actually yields.

57.     Plaintiff has standing to pursue this claim because he has suffered an injury-in-fact and has lost money or property as a result of Defendant's deceptive acts and practices. Specifically, Plaintiff purchased a Coffee Product for his own personal consumption.  In doing so, Plaintiff relied upon Defendant's false, misleading, and deceptive representations that the Coffee Product would produce more servings of coffee than it actually did.  Plaintiff spent money in the transaction that he otherwise would not have spent had he known the truth about Defendant's advertising claims.

58.     Defendant's deceptive acts and practices were directed at consumers.

59.     Defendant's deceptive acts and practices are misleading in a material way because, as alleged above and herein, they violate consumers' reasonable expectations.  If Defendant had advertised its Coffee Products truthfully and in a non-misleading fashion, Plaintiff and other Class and Subclass Members would not have purchased the Coffee Products or would not have paid as much as they did for them.

60.     As a direct and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Plaintiff and other Members of the Class and Subclass were injured in that they: (1) paid money for Coffee Products that were not what Defendant represented; (2) were deprived of the benefit of the bargain because the Coffee Products they purchased were different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Coffee Products they purchased had less value than Defendant represented.

61.     On behalf of himself and Members of the New York Subclass, Plaintiff Telesco seeks to enjoin Defendant's unlawful acts and practices and recover his actual damages or five hundred (500) dollars per violation, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, seeks judgment against Defendant as follows:

a.   Certifying the Class and Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass Members;

b.   Declaring that Defendant's conduct violates the statutes referenced herein;

c.  Finding in favor of Plaintiff, the Class, and the Subclass against Defendant on all counts asserted herein;

d.  Ordering Defendant to disgorge and make restitution of all monies Defendant acquired by means of the unlawful practices as set forth herein;

e.  Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendant from continuing the unlawful practices as set forth herein, and directing Defendant to identify, with Court supervision, victims of its conduct and pay them all the money it is required to pay;

f.  Awarding Plaintiff and Class and Subclass Members their costs and expenses incurred in the action, including reasonable attorneys' fees;

g.  Ordering Defendant to pay pre-judgment interest on all amounts awarded;

h.  Providing such further relief as may be just and proper.

### **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury on all claims so triable.

Dated: April 1, 2022                        Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:____*/s/ Frederick J. Klorczyk III*_____
            Frederick J. Klorczyk III

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY  10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**
L. Timothy Fisher*
Brittany S. Scott*
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone:  (925) 300-4455
Facsimile:  (925) 407-2700

Email:  ltfisher@bursor.com
        bscott@bursor.com

*Pro Hac Vice Forthcoming*

*Attorneys for Plaintiff*