USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/18/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

KENNETH TELESCO, *individually and on behalf of all others similarly situated*,

                Plaintiff,

-against-

STARBUCKS CORPORATION,

                Defendant.

No. 22 Civ. 2687 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

This putative class action on behalf of purchasers of Starbucks Cold Brew Concentrate alleges that the defendant, Starbucks Corporation ("Defendant") manufactured, distributed, and sold underfilled coffee products. Plaintiff Kenneth Telesco ("Plaintiff"), individually and on behalf of others similarly situated, brings this action against Defendant asserting claims for: (1) breach of express warranty; (2) violation of New York General Business Law § 349 ("GBL § 349") for deceptive acts or practices; and (3) violation of New York General Business Law § 350 ("GBL § 350") for false advertising. Presently before the court is Defendant's motion to dismiss Plaintiff's First Amended Class Action Complaint ("FAC") (ECF No. 16) under Federal Rule of Civil Procedure 12(b)(6) (the "Motion") (ECF No. 25). For the following reasons, the Court GRANTS Defendant's Motion.

## BACKGROUND

### I. Factual Background

The following facts are derived from the FAC; they are taken as true and construed in the light most favorable to Plaintiff for the purposes of this Motion.

Defendant is an American multinational chain of coffeehouses and roastery reserves that manufactures, distributes, and sells coffee products. (FAC ¶ 2.) Plaintiff Kenneth Telesco, a resident of New Rochelle, New York, alleges that the Defendant's advertising and marketing of its Coffee Products are false and misleading and omit material information. (*Id.* ¶ 12.) The product in issue is Defendant's Cold Brew Concentrate (the "Coffee Products"). (*Id.* ¶ 1.)

Specifically, Plaintiff alleges that the packaging and labeling on the Coffee Products misrepresent the amount of cold brew coffee a consumer can make when using the Coffee Products. (*Id.*) The Coffee Products prominently advertise on the front of the bottle: "Makes 8 servings when prepared as directed," but it only yields 5 servings when following the FDA's Reference Amounts Customarily Consumed Per Eating Occasion ("RACC"). (*Id.* ¶ 5.)

The FDA's Code of Regulations defines serving sizes for a wide variety of food products, including coffee: "by law, serving sizes must be based on how much food [or beverages] people actually consume," reflecting consumer habits and preferences, not recommended portion sizes. (*Id.* ¶ 4.) Specifically regarding "coffee or tea, flavored or sweetened," the RACC defines one serving size as 12 fluid ounces. (*Id.* ¶ 5.) This is the generally accepted minimum size for iced coffee beverages, and other high selling beverages on the market also follow this generally accepted minimum serving size. (*Id.* ¶ 6.)

When using the RACC definition of a 12-ounce serving size, the Coffee Products produce 5 servings of coffee per 32-ounce bottle (*Id.* ¶ 9.) The Nutrition Facts label on the back of the Coffee Products clearly advertises this fact for consumers; it reads, "3/4 cup (180 mL) concentrate makes 1-½ cups (260 mL), or 5 servings when using 12 ounces per serving." (*Id.*) However, when following the instructions on the side of the Coffee Products, the Coffee Products produce 8 servings of coffee, as these instructions are for an 8 ounce, rather than 12 ounce serving. (*Id.* ¶ 11.)

Per the instructions located on the side of the bottle, one serving of the Coffee Product equals 4 ounces of the Coffee Products plus 4 fluid ounces of water, for a total of 8 fluid ounces. Plaintiff alleges that the Coffee Products are, therefore, underfilled by 33 percent, as Defendant's use of an 8-ounce serving leaves the Coffee Products 2/3 the size of a bottle that contains 8 servings of an FDA 12 ounce serving. (*Id.* ¶¶ 8,19.)

Plaintiff purchased a bottle of the Coffee Products in or about September 2021 at his local Stop & Shop grocery store in New Rochelle, New York. (*Id.* ¶ 12.) Plaintiff alleges that he bought the bottle after reviewing the Coffee Products' labeling and packaging on the front of the bottle, which advertised that the Coffee Products contained 8 servings of coffee. (*Id.*) Plaintiff claims that he relied on said labeling and packaging when choosing the Coffee Products over comparable products and understood them as representations and warranties on which he could reliably depend. (*Id.*) Plaintiff avers that had he known the Coffee Products only made 5 FDA servings, he would not have purchased a bottle of the Coffee Products at what he characterizes is a substantial price premium. (*Id.*) As a result, Plaintiff alleges that he did not receive the benefit of the bargain because his bottle of the Coffee Products did not contain 8 servings of 12 ounces of cold brew coffee, a representation and warranty that he claims was provided on the product's labeling and packaging. (*Id.*) In sum, Plaintiff, class and subclass allege: (1) they paid money for coffee products that were not what Defendant represented, (2) they were deprived of the benefit of the bargain because the coffee products they purchased were different than what the defendant advertised, and (3) they were deprived of the benefit of the bargain because the coffee products they purchased had less value than what the defendant represented. (*Id.* ¶ 25.)

**II.      Procedural Background**

On or around May 18, 2021, Defendant was served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-213, 2-607. (FAC ¶ 42.) The letter advised Defendant of breaching an express warranty and demanded that Defendant cease and desist from such breaches and pay full restitution to customers affected by the violation. (*Id.*)

On April 1, 2022, Plaintiff filed the operative class action complaint, asserting claims for violations of (1) express warranty, (2) New York General Business Law § 349 for deceptive acts or practices, and (3) New York General Business Law § 350 for false advertising. (ECF No. 1.) As relief, Plaintiff seeks monetary relief and injunctive relief that would require Defendant to correct the allegedly misleading label on the packaging. (*Id.*) Plaintiff demands a trial by jury on all claims so triable. (*Id.*)

On July 6, 2022, Plaintiff filed their first amended class action complaint. (ECF No. 16.) Subsequently, on November 21, 2022, Defendant filed its notice of motion and motion to dismiss the FAC. (ECF No. 25); Defendant moves to dismiss this action with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that the FAC fails to state a claim upon which relief can be granted. (*Id.*) On that same day, Defendant filed its memorandum of law in support of its motion to dismiss the first amended complaint. (ECF No. 26). Plaintiff filed its memorandum of law in opposition to defendant's motion to dismiss (ECF No. 28), and Defendant filed its reply in support of the motion to dismiss. (ECF No. 30).

## LEGAL STANDARD

### I.  Federal Rule of Civil Procedure 12(b)(6)

On a motion to dismiss under 12(b)(6) for "failure to state a claim upon which relief can be granted," the "Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor." *Wargo v. Hillshire Brands Co.,* 599 F. Supp. 3d 164 at

171 (S.D.N.Y. 2022). To survive a motion to dismiss, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 at 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual conduct that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.* However, "threadbare recitals of the elements cause of action, supported by mere conclusory statements, do not suffice" because "we are not bound to accept as true a legal conclusion couched as a factual allegation. *Id.* In applying these principles, the court should consider the specific facts that have been alleged in the complaint to determine if it is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.*

## DISCUSSION

**A. Plaintiff's claims pursuant to GBL § 349 and GBL § 350 are dismissed.**

Under GBL § 349, "deceptive acts or practices in the conduct of any business, trade of commerce in the furnishing of any services in this state are [] declared unlawful." N.Y. Gen. Bus. Law § 349 (McKinney). Similarly, GBL § 350 states that "false advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is [] declared unlawful." N.Y. Gen. Bus. Law § 350 (McKinney). It has further been established that the standard for recovery under [§] 350, while specific to false advertising, is otherwise identical to [§] 349." *Wargo v. Hillshire Brands Co.,* 599 F. Supp. 3d 164 (S.D.N.Y. 2022) (quoting *Goshen v. Mut. Life Ins. Co. of New York,* 98 N.Y.2d 314, 324, 774 N.E.2d 1190, 1195 (2002)). Therefore, the Court addresses these claims together.

"Claims under GBL §§ 349 and 350 are available to 'an individual consumer who falls victim to misrepresentations made by a seller of consumer goods through false or misleading advertising." *Solomon v. Bell Atl. Corp.,* 777 N.Y.S.2d 50 at 54 (2004). Through a three-prong analysis, a plaintiff must allege that a defendant has engaged in: (1) consumer-oriented conduct that is (2) materially misleading and that (3) the plaintiff suffered an injury as a result of the allegedly deceptive acts or practices. *Orlander v. Staples, Inc.,* 802 F.3d 289 (2d Cir. 2015). To state such a claim, a plaintiff must allege that the defendant has engaged in an act or practice that is deceptive or misleading in a material way and that plaintiff has been injured by this deceptive or misleading act or practice. *Id.* "A deceptive act or practice is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer, by which the consumer is 'caused actual although not pecuniary, harm.'" *Solomon,* 777 N.Y.S.2d 50, at 55. Deceptive or misleading misrepresentations are misrepresentations that are, therefore, "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.*, at 54.

    a. *Consumer-Oriented Conduct*

The consumer-oriented nature of the conduct is not contested. "A defendant engages in 'consumer-oriented' activity if [the company's] actions cause injury or harm to the public interest." *Cooper v. Anheuser-Busch, LLC,* 553 F. Supp. 3d 83 at 94 (S.D.N.Y. 2021). This requirement can be satisfied by showing that the conduct at issue "'potentially affect[s]' similarly situated consumers." *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.,* 647 N.E.2d 741 at 744 (1995). Here, Plaintiff alleges that Defendant's "advertising and marketing of the Coffee Products is false and misleading and omits material information." (FAC ¶ 17.) Plaintiff also alleges that they and other members of the putative class have been misled into purchasing a product they otherwise would not have purchased or paid as much for as they did. (*Id.* ¶ 11.) These

allegations are sufficient to satisfy the first element of Plaintiff's GBL claims. *See Sheth v. New York Life Ins. Co.,* 709 N.Y.S.2d 74 at 74 (App. Div. 1d Dep't 2000) (where the court found that the requirement for consumer-oriented conduct was met via Plaintiff's "showing that the practice has a broader impact on the consumer at large").

      b. *Materially Misleading Conduct*

The main issue in question is the second element of Plaintiff's GBL claims— whether the Coffee Products' labeling is materially misleading. Such a determination is appropriate only if Plaintiff's claims are "patently implausible" or "unrealistic." *Eidelman v. Sun Prod. Corp.,* No. 16-CV-3914 (NSR), 2017 WL 4277187, at *4 (S.D.N.Y. Sept. 25, 2017). *See Stoltz v. Fage Dairy Processing Indus., S.A.,* No. 14-CV-3826 MKB, 2015 WL 5579872, at *20 (E.D.N.Y. Sept. 22, 2015) ("[w]hile Defendant's [consumer-oriented] arguments... may ultimately prevail, the allegations in this case do not presently the type of patently implausible claim that warrants dismissal as a matter of law based on the reasonable consumer prong.")

"Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is 'well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer.'" *Fink v. Time Warner Cable,* 714 F.3d 739 at 741 (2d Cir. 2013). As discussed *infra*, the Court concludes, as a matter of law, that the label at issue here "would *not* be misleading to a reasonable consumer." *Rivera v. Navient Sols., LLC,* No. 20-CV-1284 (LJL), 2020 WL 4895698, at *8 (S.D.N.Y. Aug. 19, 2020).

The most significant evidence in a consumer-fraud case arising out of allegedly false advertising is the advertising itself. *Fink,* 714 F.3d 739 at 742. Specifically, "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is

7

crucial." *Id.* Under certain circumstances, for instance, "the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *See Broder v. MBNA Corp.,* 281 A.D.2d 369 at 371 (2001) (where the court dismissed the cause of action brought under GBL § 349 "when the allegedly deceptive practice was fully disclosed"). Indeed, "[i]f a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." *Davis v. Hain Celestial Grp., Inc,* 297 F. Supp. 3d 327 at 334 (E.D.N.Y. 2018); *see also La Vigne v. Costco Wholesale Corp.,* 284 F. Supp. 3d 496 at 512 (S.D.N.Y. 2018), *aff'd,* 772 F. App'x 4 (2d Cir. 2019) ("[t]he New York Court of Appeals has adopted an objective interpretation of 'misleading' under which the alleged act must be 'likely to mislead a reasonable consumer acting under the circumstances'"); *Fermin v. Pfizer Inc.,* 215 F. Supp. 3d 209 at 211 (E.D.N.Y. 2016) (internal citation and quotation marks omitted) ("In determining whether a reasonable consumer would be misled by [a product's] packages, the Court must consider the entire context of the [package]").

     A consumer, therefore, cannot pick and choose only information on the bottle that supports their argument as to why they were purportedly misled. Yet, that is exactly the type of argument that Plaintiff offers here. Plaintiff, for instance, alleges that the statement, "makes 8 servings when prepared as directed" is deceptive because, when using the RACC-based serving size, the Coffee Products make only five servings of cold brew coffee. (FAC ¶ 17.) However, the statement "when prepared as directed" clearly refers to the clear and unambiguous instructions on the side of the bottle, which directs consumers "to combine 4 fluid ounces of the Coffee Products and 4 fluid ounces of water – for a total of 8 fluid ounces." (ECF No. 28, at 5). When following this "1:1

ratio" of concentrate and water, as directed, a consumer will be able to make eight (8) 8-ounce servings of cold brew coffee from a bottle of the Coffee Products. (FAC ¶ 11.)

Thus, Plaintiff's theory depends on the idea that a reasonable consumer would expect that the Coffee Products make eight (8) 12 ounce servings of cold brew coffee, despite the existence of clear language on the front and side of the Coffee Products indicating that: (1) the Coffee Products make 8 servings when the cold brew coffee is prepared "*as directed*" (emphasis added); and (2) that the language "as directed" refers to instructions on the side of the Coffee Products for the consumer to "combine 4 fluid ounces of the Coffee Products and 4 fluid ounces of water – for a total of 8 fluid ounces." (ECF No. 28, at 5.) A reasonable consumer would not have a valid argument for failing to read and follow instructions as clear as those on the front and side of the Coffee Products, even if (as Plaintiff appears to argue) such a consumer initially expects that every beverage they intend to purchase contains the RACC-based serving size of 12 fluid ounces.[1] *See Devey v. Big Lots, Inc.,* No. 21-CV-6688L, 2022 WL 6827447 at *3 (W.D.N.Y. Oct. 12, 2022) (where the court found that, "the Product's label would not have misled a reasonable consumer, who followed the instructions on the label, in a manner that the consumer would find to be material"). This type of situation, where Plaintiff failed to follow instructions on a label that a reasonable consumer would follow, is distinguishable from cases, such as *Mantikas v. Kellogg Company*, where the court ruled that "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box"; as noted *supra*, there is no factual misrepresentation on the

---

[1] The Court further notes that it does not find Plaintiff's contention that the average reasonable consumer would expect a serving size to always be 12 fluid ounces logical or persuasive, as average reasonable consumers are unlikely to incorporate FDA regulations and guidance into their daily lives. *See Dashnau v. Unilever Mfg. (US), Inc.,* 529 F. Supp. 3d 235 at 241 (S.D.N.Y. 2021).

Coffee Products. *Mantikas v. Kellogg Co.,* 910 F.3d 633 at 637 (2d Cir. 2018).[2] In sum, Plaintiff is essentially trying to state a false advertising claim by attempting to rewrite the product label, while ignoring clear language and other labels on the bottle referencing servings. "A Plaintiff who alleges that he was deceived by an advertisement may not misquote or misleadingly excerpt the language of the advertisement in his pleadings and expect his action to survive a motion to dismiss or, indeed, to escape admonishment." *Fink,* 714 F.3d 739 at 742. Here, the allegations of the First Amended Complaint purposely omit and fail to reference the plain language on the bottle, viewing each piece separately. Instead, "[t]he entire mosaic should be viewed rather than each tile separately." *Hesse v. Godiva Chocolatier, Inc.,* 463 F. Supp. 3d 453 (S.D.N.Y. 2020) (quoting *S.C. Johnson & Son, Inc. v. Clorox Co.,* 241 F.3d 232 (2d Cir. 2001)). Indeed, since there is no legal requirement that the RACC 12 ounce serving size for coffee must be equal to the serving size companies use for coffee, Plaintiff does not assert a plausible claim. Thus, the Court grants Defendant's motion to dismiss Plaintiff's claims pursuant to GBL §§ 349 and 350.

### B. Plaintiff's claim for Breach of Express Warranty is dismissed.

Plaintiff also asserts a claim for breach of express warranty. (ECF No. 1.) To successfully state a claim for a breach of express warranty under New York law, courts in this District consider the following factors: (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach. *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.,* 8 F. Supp. 3d 467 (S.D.N.Y. 2014).

---

[2] The Court also notes that the front of the bottle clearly states that it is a 32-ounce bottle, which would produce 64 ounces of coffee (or eight (8) 8-ounce servings) when following the instructions on the label. The "reasonable consumer" test is, the Court reiterates not based on the "least sophisticated consumer" who is unable to perform simple math. *Weinstein v. eBay, Inc.,* 819 F. Supp. 2d 219 at 228 (S.D.N.Y. 2011).

"A claim for breach of express warranty must rest on specific misleading statements not entire advertisements or other collections of information that are allegedly misleading when viewed in the aggregate." *DiBartolo v. Abbott Labs*, 914 F. Supp. 2d 601, 626 (S.D.N.Y. 2012). If the Court "is unable to determine as a matter of law that the statements are not misleading under GBL § 349, it is equally inappropriate to determine they are not misleading for the warranty claims." *Goldemberg,* 8 F. Supp. 3d 467 at 483. Under the same reasoning applied to the above analysis of Plaintiff's claims for violations of New York General Business Laws §§ 349 and 350, since none of the above statements are false and misleading as a matter of law, it is equally inappropriate to determine that there is a breach of express warranty here. *See Myers v. Wakefern Food Corp.,* No. 20 CIV. 8470 (NSR), 2022 WL 603000, at *7 (S.D.N.Y. Mar. 1, 2022) (where the court found the Plaintiff's claim for breach of express warranty fails because the Defendant's statements did "not support an express warranty claim if they are such that a reasonable consumer would not interpret the statement as a factual claim upon which he or she could rely). Thus, Defendant's motion to dismiss Plaintiff's claim for breach of express warranty must be granted as well.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss with respect to Plaintiff's: (1) claim for breach of express warranty; (2) claim for violation of GBL § 349; and (3) claim for violation of GBL § 350. The Court dismisses these claims without prejudice.

As Plaintiff's First Amended Class Action Complaint was the first Complaint for which motion practice occurred, Plaintiff is granted leave to file a Second Amended Complaint. Plaintiff will have until August 11, 2023 to do so, consistent with this order. Plaintiff is advised that the Second Amended Complaint will replace, not supplement, the First Amended Complaint, and so

any claims they wish to pursue must be included in, or attached to, the Second Amended Complaint. Defendant is then directed to answer or otherwise respond by September 5, 2023.

If Plaintiff fails to file a second Amended Complaint within the time allowed, those claims dismissed without prejudice by this order will be deemed dismissed with prejudice.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 25.

Dated: July 18, 2023                                                  So Ordered,
      White Plains, NY

                                                               Hon. Nelson S. Roman
                                                               U.S. District Court, SDNY